PETER B. RYAN & others[1] *vs.* ANNE T. RYAN.[2]

Middlesex. September 13, 1994. - December 5, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Survival of Action. Attorney at Law*, Malpractice. *Contract*, Performance and breach. *Frauds, Statute of. Wills, Statute of. Privileged Communication.*

The contract aspect of a malpractice claim survived the death of the attorney. [89]

With respect to a malpractice claim against the estate of an attorney in which the plaintiffs, the attorney's children, contended that their father negligently advised his former wife, their mother, that his oral promise to provide for the children at his death need not be in writing and that his negligent advice caused them to lose the promised inheritance, the defendants' motion for judgment notwithstanding the verdict should have been allowed where, although the evidence warranted a finding that the attorney promised to leave two-thirds of his estate to his children, the evidence was insufficient to warrant a finding that the attorney told his former wife that his oral promise was enforceable. [89-93]

There was no evidence or particular allegation in a civil complaint that an attorney had committed fraud so that his estate should not be permitted to rely on the Statute of Frauds in order to defeat the contract-based claims in the complaint. [93-94]

The record of a civil action did not demonstrate that the judge erred in deciding that certain information submitted in connection with an annulment proceeding within the Catholic Church was privileged under G. L. c. 233, § 20A, and that the executrices of the person who had submitted the information could not waive the privilege. [94-96]

---

[1] Paul Mark Ryan, Jr., individually, and Lisa Ryan Ziobro, and Stephanie Ryan Streit, individually and as coexecutrices of the estate of Marion Stephanie Fleming.

[2] Individually and as executrix of the estate of Paul Mark Ryan.

CIVIL ACTION commenced in the Superior Court Department on June 11, 1990.

The case was tried before *Elizabeth Butler*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Erik Lund & Richard W. Renehan* (*Michael J. Pineault* with them) for the defendant.

*Laurence M. Johnson* (*Daniel J. Goldberg & Matthew D. Baxter* with him) for the plaintiffs.

WILKINS, J. When Paul Mark Ryan (Ryan), a member of the Massachusetts bar, wished to obtain an annulment from the Catholic Church of his marriage to Marion Stephanie Fleming (Fleming) in order to be able to marry Anne "Nancy" T. McDevitt (McDevitt) within the church, as McDevitt insisted, Ryan approached Fleming for her cooperation. Relations between Ryan and Fleming, who had been legally divorced in 1977, were cordial. Fleming indicated that she would assist in his request for an annulment.

The jury could have found that, in the course of discussions of an annulment, when Fleming asked Ryan what his intentions were concerning the rights of their four children to inheritance at his death, Ryan assured her that they would inherit two-thirds of his estate. According to the uncorroborated testimony of one of the Ryan children, Lisa Ryan Ziobro, Fleming further asked Ryan whether his promise needed to be in writing, and Ryan replied that his oral promise was enforceable.

This appeal largely concerns Ryan's alleged statement that his oral promise to leave two-thirds of his estate to his four children was enforceable. On the defendant's motion for summary judgment with respect to certain counts of the complaint, the judge correctly ruled that the oral promise itself was not enforceable and granted summary judgment to the defendant on counts based on that promise. The children also asserted a claim of malpractice against Ryan's estate on the theory that Ryan, acting implicitly as Fleming's attorney, negligently advised her that his oral promise was enforceable.

It is on this theory that the jury decided in favor of the plaintiff children.[3]

The annulment was granted in 1986, and Ryan promptly married McDevitt within the Catholic Church. He died approximately two and one-half years later. Ryan had executed a new will after his marriage to McDevitt in which he did not leave two-thirds of his estate to his children but rather favored his new wife.[4] After an abortive attempt to challenge the will in the Probate and Family Court, the children and Fleming brought this action in the Superior Court.[5]

McDevitt, as executrix of Ryan's estate, appeals from a judgment that awarded the plaintiffs two-thirds of the value of their father's estate.[6] The plaintiffs also appeal, challenging (a) the granting of summary judgment to the defendant on certain counts of the complaint and (b) the judge's denial of their attempt to obtain access to documents that Fleming had submitted to representatives of the Catholic Church in connection with the annulment. We allowed the parties' application for direct appellate review.

The most challenging question concerns the propriety of the jury's verdict allowing the plaintiffs to recover on their malpractice claim, the consequence of which is that they re-

[3]The malpractice claim is advanced by the children individually, and not by the representatives of Fleming's estate. We shall refer to the Ryan children individually as the plaintiffs.

[4]The will put Ryan's residuary estate in two trusts, one-half in a marital deduction trust for his widow (McDevitt). Under the other trust the children were entitled to the principal after McDevitt's death, to the extent the trustee had not distributed principal to her.

[5]Fleming, who was an original plaintiff, died soon after the complaint was filed. In September, 1992, her daughters as executrices of her will were substituted for her as plaintiffs.

[6]In answer to special questions, the jury found that Ryan owed a duty of care to his children, found that his negligence as an attorney caused damages to the plaintiffs, and awarded approximately $2,470,000 to the children.

As to a claim of malpractice asserted by the representatives of the Fleming estate, the jury found that there had been an attorney-client relationship, that Ryan had been negligent in his representation of Fleming, and that his negligence caused her financial damage. However, the jury further found that she sustained no "dollar amount of damage."

cover precisely what they could not properly obtain in seeking to enforce Ryan's oral promises concerning the disposition of his estate at death. After we conclude that the malpractice claim survived Ryan's death, we decide that the evidence that Ryan advised Fleming that his oral promise was enforceable was insufficient to warrant submission of that claim to the jury.

1. The defendant contends that the plaintiffs' malpractice claim did not survive Ryan's death. Actions of contract based on malpractice survive the death of an attorney. *McStowe* v. *Bornstein*, 377 Mass. 804, 806-807 (1979). We have left open, and need not now decide, the question whether a claim of legal malpractice sounding in tort survives the death of an attorney. *Id.*

The defendant argues that the plaintiffs' malpractice claim is only a tort claim. We disagree. Assuming that (a) there was an attorney-client relationship between Ryan and Fleming and (b) that relationship involved an implied agreement by Ryan to conduct himself reasonably according to the ordinary skill of an attorney in the circumstances, Ryan's alleged misstatement that his oral promise was enforceable would be a breach of that implied contract. The plaintiffs claim that they were intended beneficiaries of Ryan's agreement to leave them two-thirds of his estate and that his negligence as an attorney caused that inheritance to fail because their mother did not know that she should insist on a written promise from Ryan. Without deciding by implication any other issue concerning the validity of the third-party beneficiary claim, we hold that the contract aspect of the plaintiffs' malpractice claim survived Ryan's death.

2. The evidence did not warrant a finding that Ryan told Fleming that his oral promise to leave two-thirds of his estate to their children was enforceable. The defendant's motion for

a judgment notwithstanding the verdict should have been allowed.[7]

There is considerable evidence that Ryan promised his former wife that he would leave two-thirds of his estate to their children. He apparently erroneously believed that would be the consequence if he were to die without a will.[8] Ryan also promised that, if he made a will, he would ensure that the dispositional result would be the same. Ryan's promises were unenforceable either as a promise to make a disposition of property at death (G. L. c. 259, §§ 5, 5A [1992 ed.]) or as a basis for overriding the provisions of his will (G. L. c. 191, § 1 [1992 ed.]).

The plaintiffs were successful before the jury on a different theory of liability, one not directly based on Ryan's breach of his oral promise concerning the distribution of his estate at death. That theory is premised on the implied existence of an attorney-client relationship between Ryan and Fleming. Without deciding the points, we shall assume for discussion purposes that such a relationship existed[9] and that the plaintiffs are entitled to assert their malpractice claim as third-party beneficiaries of Ryan's promise. The plaintiffs contend that their father negligently advised their mother as her lawyer that his oral promise to provide for them at his death need not be in writing and that his negligent advice caused them, the intended beneficiaries of that promise, to lose the promised inheritance. The plaintiffs' malpractice claim thus depends on adequate proof that Ryan advised Fleming that his oral promise to leave two-thirds of his estate to his children was enforceable.

---

[7]In a case of this character it was appropriate to submit the case to the jury, leaving the question of the adequacy of the evidence for consideration on a motion for judgment n.o.v.

[8]The statute concerning intestacy in fact called for the equal division of an estate between a surviving spouse and surviving children. G. L. c. 190, §§ 1-3 (1992 ed.).

[9]As to circumstances that warrant the conclusion that an attorney-client relationship exists, see *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 522, cert. denied, 493 U.S. 894 (1989); *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 817-818 (1983).

The enforcement of Ryan's oral promise, which, as a practical matter, granting relief to the plaintiffs would do, would in effect override both the Statute of Frauds and a major portion of Ryan's intentions expressed in his will. Principles underlying the Statute of Frauds and the Statute of Wills require that we demand reliable proof in the malpractice claim that Ryan not only promised his former wife that he would leave his children two-thirds of his estate but also advised her that his oral promise was enforceable. We conclude that, although the evidence warranted a finding that Ryan promised to leave two-thirds of his estate to his children, the evidence was insufficient to warrant a finding that Ryan told his former wife that his oral promise was enforceable.

The sole evidence that supports the plaintiffs' theory that Ryan said that his oral promise was enforceable came from Lisa Ryan Ziobro. She testified to a 1985 telephone conversation with Fleming in which her mother recounted Ryan's promise that two-thirds of his estate would go to their children at his death. Ziobro testified that then her mother had "said that she'd specifically asked my father whether [the promise] had to be in writing. And he said that an oral contract was legally binding. And that she could rely on that." None of the other Ryan children testified to having heard of such an assurance from their mother or from their father. Nor is there any other corroborative source for Ziobro's testimony that Ryan had said that his oral promise was legally binding.

The self-interested, uncorroborated testimony of Ziobro concerning what one deceased person (Fleming) said that another deceased person (Ryan) had represented as a rule of law is not sufficient to warrant a finding that Ryan advised Fleming that his oral promise was enforceable. We do not accept that testimony as sufficient to support a verdict that in effect enforces Ryan's otherwise unenforceable oral promise concerning the disposition of his estate at death (and also in effect overrides a major portion of Ryan's intention expressed in his last will). We are concerned here more with the preservation and application of principles that underlie rules that

govern the transfer of property than we are with legal malpractice.

Proof sufficient to override the purposes behind the Statute of Frauds and the Statute of Wills in this circumstance must be clear and persuasive. The principles underlying those statutes have such force that proof of legal malpractice in this case required more than the Ziobro testimony, uncorroborated on the essential question of the furnishing of negligent legal advice. See *Foley* v. *Coan*, 272 Mass. 207, 209-210 (1930) (proof of gift in contemplation of death "must be convincing, though it need not reach the certainty required in criminal proceedings," because safeguards required by statute for disposition of property by will are lacking); *Coghlin* v. *White*, 273 Mass. 53, 55 (1930) (proof by oral evidence of lost will must be strong, positive, and free from doubt); *Coolidge* v. *Loring*, 235 Mass. 220, 224 (1920) (reformation of trust instrument on ground of mistake requires full, clear, and decisive proof of mistake); *Newell* v. *Homer*, 120 Mass. 277, 280 (1876) (same). Cf. *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 317 (1871) (where reformation of instrument is sought on ground of mutual mistake, proof must be "full, clear, and decisive; free from doubt or uncertainty"); Restatement of Law Governing Lawyers § 73 comment f (Tentative Draft No. 7 1994) ("When a third party seeks to recover from a lawyer for failing to exercise care in implementing a client's intent relating to a document, such as a will, for which the law imposes formal or evidentiary requirements, the third person must prove the client's intent by submitting evidence whose reliability is comparable to that ensured by those requirements").[10]

We conclude, therefore, that the defendant's motion for judgment notwithstanding the verdict on the plaintiffs' legal malpractice claim should have been allowed. The evidence most favorable to the plaintiffs was not sufficient to warrant

---

[10]It is obvious that, if an attorney other than Ryan had told Fleming that Ryan's oral promise was enforceable, a very different situation would be involved in the proof of malpractice.

a finding that Ryan advised his former wife that his oral promise was enforceable. A case of the type sought to be made under the plaintiffs' malpractice count requires reliable, persuasive evidence on each essential element of the plaintiffs' case. The testimony of one uncorroborated interested witness was not enough to warrant submission of the malpractice count to the jury.[11]

This case presents a specialized circumstance. If Ryan had not been a lawyer, his advice that his oral promise was enforceable would not be considered actionable. Such a person would not have been holding himself out as a lawyer, and reliance on his legal advice would not have been reasonable as a matter of law. The plaintiffs are in effect, therefore, espousing a rule that would deny to the estates of lawyers (and no one else) the protections of the Statute of Frauds and Statute of Wills when there is a claim that (a) a lawyer, acting as a lawyer, negligently advised someone concerning the anticipated disposition of the lawyer's estate at death and (b) that negligent advice caused harm to that person, who reasonably relied on that advice, or to some third party who, it is claimed, is entitled to relief in the circumstances. In such a case, it is not appropriate to permit the case to be made unless the attorney-client relationship (a fact we have assumed) and the legal advice given are proved by strong, clear, and convincing evidence. There was no such evidence here that legal advice was given.

3. Finally we consider the two issues that are presented by the appeal of the Ryan children, including two of them as representatives of Fleming's estate. One issue merits only

[11]We have elected to decide the judgment n.o.v. issue on the question whether there was sufficient evidence to warrant a finding that legal advice was given rather than on the broader question whether an attorney-client relationship existed between Ryan and Fleming at the time of the conversation. The inadequacy of the evidence point on which we decide this issue was presented in the defendant's motion for judgment n.o.v. It was presented less clearly in the defendant's motion for a directed verdict. We, of course, may decide a case on a theory not raised by any party. *Foley* v. *Lowell Sun Publishing Co.*, 404 Mass. 9, 10-11 (1989). *Commonwealth* v. *Elder*, 389 Mass. 743, 746 (1983).

brief discussion. We reject the argument that the defendant should not have been allowed to rely on the Statute of Frauds in obtaining summary judgment on contract-based counts of the complaint. There is no evidence or particular allegation in the complaint that Ryan committed fraud so that his estate should not be permitted to rely on the Statute of Frauds in order to defeat the contract-based claims in the complaint.

The trial judge allowed a motion of the Roman Catholic Archbishop of Boston to quash a subpoena by which the plaintiffs sought to obtain documents that Fleming furnished in connection with the annulment proceedings. The judge ruled that the priest-penitent privilege provided in G. L. c. 233, § 20A (1992 ed.), applied and that Fleming's executrices could not waive the privilege.

The argument before us is directed to the claim of Fleming's estate that the evidence would have supported an award of damages on a count alleging a right to recover in quantum meruit. The jury concluded, in answer to special questions concerning that count, that Fleming had conferred a benefit on Ryan by fulfilling her promise to Ryan to cooperate in the annulment proceeding but that the dollar value of that benefit was zero.[12]

Section 20A of G. L. c. 233 provides that "[a] priest . . . shall not, without the consent of the person making the confession, be allowed to disclose a confession made to him in his professional character . . . nor shall a priest . . . testify as to any communication made to him by any person in seeking religious or spiritual advice or comfort . . . without the consent of such person."

We do not have a record of the proceedings before the judge on the motion to quash the subpoena. We have no indi-

---

[12]The parties apparently agreed to the submission of a question as to the value of the benefit conferred on Ryan. In quantum meruit actions, our more recent opinions have referred to the value of the services rendered (see *Green* v. *Richmond*, 369 Mass. 47, 56 [1975]) or to the fair value of what the defendant has received (*Heil* v. *McCann*, 360 Mass. 507, 511 [1971]).

cation of what a person such as Fleming would be expected to reveal in her participation in the annulment proceedings. This is not a subject on which we could take judicial notice. We conclude that the record does not demonstrate that the judge erred in deciding that the information submitted by Fleming was privileged under § 20A. The process may well have literally involved "seeking religious or spiritual advice or comfort," but, in any event, the process appears to fall within the scope of what the Legislature was seeking to protect by § 20A.[13]

The plaintiffs argue further that any such privilege can be waived and that Fleming's executrices can waive the privilege and that they did so. In certain circumstances, an executor or administrator may waive a privilege of the deceased, such as the attorney-client privilege and the psychotherapist-patient privilege (G. L. c. 233, § 20B [1992 ed.]). See *District Attorney for the Norfolk Dist.* v. *Magraw*, 417 Mass. 169, 172-174 (1994). Unlike the priest-penitent privilege which is absolute, the psychotherapist-patient privilege is qualified. See *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 883 (1991); *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 265-266 (1986). The legislative concern for the inviolability of the communications in this case is more substantial than that expressed in most statutes announcing evidentiary privileges. Section 20A contains no list of exceptions, as does G. L. c. 233, § 20B, for example. We should, therefore, be cautious in accepting any argument that representatives of Fleming's estate, especially when they are not disinterested persons, may waive the privilege, a right that Fleming had, but never exercised.

On this record, it is not possible to determine that Fleming's interests would be served by permitting her representa-

___

[13]We need not reach the question whether there was also a constitutional bar, State or Federal, to the court or any party obtaining documents that Fleming submitted in connection with the annulment request. Cf. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 376-377, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982); *Surinach* v. *Pesquera 'de Busquets*, 604 F.2d 73, 78-79 (1st Cir. 1979).

tives to waive the privilege. The information sought by the subpoena may well involve personal and confidential information that Fleming would not have wanted revealed, or at least that she would not have wanted revealed when the sole benefit of disclosure would have been to aid in proving (a) that she performed her part of the bargain with Ryan (an uncontested fact) and (b) the benefit to Ryan of her services in cooperating in the annulment proceeding, a fact that was capable of being shown by other evidence. Assuming that there is ever to be a case in which an executor or administrator may waive the priest-penitent privilege, this is not that case.

4. The judgment is reversed. Judgment shall be entered for the defendant on all counts of the complaint.

*So ordered.*