HARRIET C. MILLER & others[1] *vs*. ROBERT MOONEY.

Worcester. January 7, 2000. - March 15, 2000.

Present: ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Practice, Civil,* Summary judgment. *Attorney at Law,* Malpractice, Attorney-client relationship, Conflict of interest. *Negligence,* Attorney at law. *Contract,* Third party beneficiary. *Consumer Protection Act,* Trade or commerce.

Where prospective beneficiaries under a will had no attorney-client relationship with the attorney who drafted the will, the attorney owed them no duty of care and was not liable to the beneficiaries under a theory of legal malpractice. [60-61]

In the circumstances of an attorney's contracting with a testator to prepare a will, prospective beneficiaries under the proposed will were only incidental beneficiaries with no enforceable rights under such a contract. [61-63]

In the circumstances of an attorney's alleged negligent misrepresentations to prospective beneficiaries under a will, the attorney's duty of undivided loyalty to the testator negated any duty to the beneficiaries where there was a potential conflict of interest. [63-64]

CIVIL ACTION commenced in the Superior Court Department on April 12, 1994.

The case was heard by *Mitchell J. Sikora, J.,* on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Gregory C. Keating* for the plaintiffs.

*Warren D. Hutchison* for the defendant.

SPINA, J. The plaintiffs, Harriet C. Miller, John K. Coggins, Carol C. Powell, and Laurel C. Oleynick, are the children and heirs of Estelle Pickett Coggins. The defendant is an attorney admitted to practice in Massachusetts, whose law office is on Nantucket. Estelle Coggins was a client of the defendant. The plaintiffs commenced an action against the defendant based on erroneous statements he made during their mother's lifetime

---

[1]John K. Coggins, Carol C. Powell, and Laurel C. Oleynick.

regarding the terms of her will, raising claims of legal malpractice, breach of contract, negligence, and a violation of G. L. c. 93A. On cross motions for summary judgment, a judge in the Superior Court ordered entry of judgment for the defendant, and the plaintiffs appealed. We transferred the case to this court on our own motion.

The following facts are not disputed. Estelle Coggins had been a client of the defendant from 1959 until her death in 1992. She executed a will in 1981, the third prepared for her by the defendant. The 1981 will included two small charitable bequests, one of which was to the Unitarian Universalist Church of Nantucket (Church). Estelle had been a long time, active member of the Church, and her parents both had served the Church as ministers. The 1981 will further provided that the remainder of Estelle's estate, the principal asset of which was her home on Nantucket, would pass to the plaintiffs in equal shares.

Sometime thereafter Estelle's son, John, told her that he and his three sisters had decided that they would not be able to maintain the Nantucket home after her death and would have to sell it. She told John she did not want the house to be sold, and therefore would consider leaving it to the Church for use as a parsonage or a guest house.

Estelle went to the defendant's office on or about November 10, 1982, to change her will. The defendant was away on vacation, so the new will was prepared by Robert Campbell, an attorney associated with the defendant. Estelle executed the new will on November 10, 1982. It was witnessed by the defendant's legal secretary and by Attorney Campbell. Under the 1982 will Estelle's home would be left to the Church, and after two small charitable bequests the remainder would pass to the plaintiffs in equal shares. When the defendant returned from vacation, he was not told of the new will, and no copy had been made for the office file.

In 1989, Estelle entered a retirement home. She moved to a nursing home in July, 1991. John wrote to the defendant on October 9, 1991, advising that Estelle wanted to sell her home and put the proceeds in a fund for her continued care. He further advised that his mother wanted her will rewritten to provide that her estate be left to each of her children and the Church in equal shares. The defendant responded by letter dated October 17:

"Dear John:

"I returned to Nantucket on October 11 from a trip to Ireland and found your letter of October 9 about your mother's affairs. Therefore I immediately went to see her on October 12 to discuss this business, as I cannot draft a new will without her approval.

"I will, of course, do whatever your mother wishes regarding her property. Right now, she seems concerned about selling the house and paying her bills. However, nobody has ever told me what the price is or who is handling this, such as what brokers are to show the place. I have tried to reach Larry Miller but have not been able to do so as yet.

"You may be assured I will continue to help out your mother, as she is one of my earliest and favorite clients, and will try to keep the family informed of our progress."

The defendant wrote to John again on December 1:

"Dear John:

"I saw your mother again on Thanksgiving Day and she was in good spirits.

"We discussed her will and she seemed content to leave the matter as is. She would like to have something go to the church but she realizes this may not be possible. As a practical matter, her present will leaves the bulk of the estate to you four children and makes you the executor, so you can give whatever you like to the church."

After Estelle's death in January, 1992, the defendant turned over the 1981 will to an attorney representing John, who Estelle had nominated to be her executor. The 1981 will was allowed on April 16, 1992. Robert Campbell died in May, 1992, and the defendant discovered Estelle's 1982 will among Campbell's papers. He sent the 1982 will to John on May 27, 1992. On June 10, 1992, the defendant wrote to John's attorney and explained that Estelle's 1982 will

"was executed in this office by Mrs. Coggins and witnessed *by my secretary*, Elizabeth Metcalf *and my as-*

*sociate* Robert E. Campbell, on November 10, 1982, while I was abroad on a trip to Ireland. Apparently, then it was deposited into safe deposit at the Pacific National Bank with no copy made for the file, which was our usual practice" (emphasis added).[2]

The decree allowing the 1981 will was subsequently vacated and the 1982 will was allowed. The house was sold after Estelle's death and the net proceeds, $157,914.31, were paid to the Church.

The plaintiff Carol C. Powell claims that, on July 25, 1991, the day her mother went to the nursing home, the defendant paid a visit to her mother, who told the defendant that she wanted to change her will to leave some money to the Church and the rest to her children. She further claims that the defendant said he would "take care of it." The defendant denies those assertions in their entirety. He also denies the plaintiff Laurel C. Oleynick's assertions that, in July, 1991, she told the defendant that her mother wanted to sell her home and use the sale proceeds to cover her ongoing expenses, and that her mother wished her estate to be divided equally between the Church and her children. He denies that Laurel asked him whether her mother's will directed such a result, and that he told her that Estelle's will was "in place" such that no further action needed to be taken.

"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). For a grant of summary judgment to be upheld, the moving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case. See *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 459 (1997).

1. *Legal malpractice.* The plaintiffs argue that the judge erred in concluding that the defendant was not liable to them under a theory of legal malpractice because he did not owe them a duty of care. The duty of care owed by an attorney arises from an

[2]Knowledge by the defendant's employees acquired in the scope of their employment is attributable to the defendant. See *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 818 (1983).

attorney-client relationship. See *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 817 (1983). See also 1 R.E. Mallen & J.M. Smith, Legal Malpractice § 8.3 (4th ed. 1996); R.W. Bishop, Prima Facie Case § 38.4 (1997); J.R. Nolan & L.R. Sartorio, Tort Law § 256 (2d ed. 1989). Existence of an attorney-client relationship is an element of a malpractice plaintiff's proof, and may be shown by an express contract, or it "may be implied 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. . . . In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it.' " *DeVaux* v. *American Home Assur. Co.*, *supra* at 817-818, quoting *Kurtenbach* v. *TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977).

The plaintiffs do not assert the existence of an attorney-client relationship with the defendant, nor have they claimed that their mother and the defendant entered into a contract to provide legal services for their benefit.[3] In the absence of proof of an attorney-client relationship, the judge correctly concluded that there was no duty of care owed by the defendant to the plaintiffs with respect to their claim of legal malpractice.

2. *Breach of contract.* The plaintiffs contend that they are third-party beneficiaries of a contract between the defendant and Estelle, and as such are entitled to maintain an action against the defendant for breach of that contract. Beneficiaries may seek to enforce such contracts under the principle that "when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the

---

[3]We assume without deciding that an attorney-client relationship may be established by proof of a third-party beneficiary contract, the purpose of which is to provide legal services for the benefit of a third party. Cf. *Ryan* v. *Ryan*, 419 Mass. 86, 90 (1994); *Spinner* v. *Nutt*, 417 Mass. 549, 555 (1994). See *McCarthy* v. *Landry*, 42 Mass. App. Ct. 488, 491 (1997) (plaintiffs "could be seen as intended beneficiaries of the contract" with attorney); *Commonwealth* v. *Jiminez*, 27 Mass. App. Ct. 1165, 1166 (1989) ("nothing intrinsically wrong in counsel for a criminal defendant being retained and compensated by a third party, provided the defendant understands and acquiesces in the arrangement"). See also S.J.C. Rule 3:07, Mass. R. Prof. C. 1.7 comment 10, 426 Mass. 1330 (1997).

latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement." *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 195 (1982), quoting *Brewer* v. *Dyer*, 7 Cush. 337, 340 (1851). We have adopted the rule of the Restatement (Second) of Contracts § 302 (1981),[4] and limit enforcement by beneficiaries to those who are *intended* beneficiaries. See *Rae* v. *Air-Speed, Inc.*, *supra.* See also 1 R.E. Mallen & J.M. Smith, *supra* at § 7.13, at 534. It must appear from "the language and circumstances of the contract" that the parties to the contract "clear[ly] and definite[ly]" intended the beneficiaries to benefit from the promised performance. *Anderson* v. *Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 366-367 (1997).

As previously noted, the plaintiffs do not claim that Estelle entered into a contract with the defendant under which he agreed to provide legal services directly to them. The plaintiffs have otherwise failed to specify the terms of the contract under which they claim to be beneficiaries. Without deciding the point, we shall assume that a contract existed between Estelle and the defendant in which he agreed to provide legal services and advice to her. Alternatively, we shall also assume the existence of a contract to prepare a particular will.

If the purpose of the contract were to provide legal services to Estelle, the plaintiffs could not be intended beneficiaries. "In preparing an estate plan and distributing property, either through a will or through inter vivos trusts, attorneys can have only one client to whom they owe a duty of undivided loyalty." *Symmons* v. *O'Keeffe*, 419 Mass. 288, 300 (1995). That client would have been Estelle. The plaintiffs could only be incidental beneficiaries with no enforceable rights under such a contract.

---

[4]Restatement (Second) of Contracts § 302 (1981) states:

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

See *Spinner* v. *Nutt*, 417 Mass. 549, 556 (1994). See also Restatement (Second) of Contracts § 302(2) (1981).

If the contract required the defendant to draft a particular will naming the plaintiffs as beneficiaries, the plaintiffs could not obtain enforcement where there was no writing to remove the agreement from the Statute of Frauds. G. L. c. 259, § 5A. See *Ryan* v. *Ryan*, 419 Mass. 86, 90 (1994). Cf. *Shopneck* v. *Rosenbloom*, 326 Mass. 81, 83-84 (1950), and cases cited (oral contract to make will unenforceable as violative of Statute of Frauds, G. L. c. 259, § 5). The plaintiffs have identified no other theory to support their third-party beneficiary contract claim. The judge correctly concluded that there was no enforceable agreement on which the plaintiffs could base their contract claim.

3. *Negligent misrepresentation.* The plaintiffs next contend that they reasonably relied to their detriment on the defendant's negligent misrepresentation that Estelle's will left the bulk of her estate to them, and as a result they "exercised forbearance by taking no further action to effectuate their mother's wishes." An attorney may owe a duty to a nonclient "who the attorney knows will rely on the services rendered." *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 524, cert. denied, 493 U.S. 894 (1989). In circumstances " 'where the attorney is also under an independent and potentially conflicting duty to a client,' we are less likely to impose a duty to nonclients." *Id.*, quoting *Page* v. *Frazier*, 388 Mass. 55, 63 (1983). It is the potential for conflict that is determinative, not the existence of an actual conflict. See *Spinner* v. *Nutt, supra* at 554.

We have previously noted that "[i]n preparing . . . a will . . . attorneys can have only one client to whom they owe a duty of undivided loyalty." *Symmons* v. *O'Keeffe, supra*. A client who engages an attorney to prepare a will may seem set on a particular plan for the distribution of her estate, as here. It is not uncommon, however, for a client to have a change of heart after reviewing a draft will. Confronting a last will and testament can produce complex psychological demands on a client that may require considerable periods of reflection. An attorney frequently prepares multiple drafts of a will before the client is reconciled to the result. The most simple distributive provisions may be the most difficult for the client to accept. Considerable patience and compassion can be required of attorneys drafting wills, especially where the client seeks guidance through very

private and sensitive matters. If a duty arose as to every prospective beneficiary mentioned by the client, the attorney-client relationship would become unduly burdened. Attorneys could find themselves in a quandary whenever the client had a change of mind, and the results would hasten to absurdity. The nature of the attorney-client relationship that arises from the drafting of a will necessitates against a duty arising in favor of prospective beneficiaries. Cf. *Logetheti* v. *Gordon*, 414 Mass. 308, 312 (1993) (duty runs to testator, not to heirs at law).

In the context of an attorney's alleged negligent failure to complete and secure execution of estate planning documents before his client died, the Supreme Court of Connecticut held that the attorney owed no duty to the prospective beneficiaries named in the estate plan. See *Krawczyk* v. *Stingle*, 208 Conn. 239 (1988). The court reasoned that a duty to beneficiaries could not coexist with the attorney's duty of undivided loyalty to the client where the former creates an "incentive . . . to exert pressure on a client to complete and execute estate planning documents summarily. Fear of liability to potential third-party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen. These potential conflicts of interest are especially significant in the context of the final disposition of a client's estate, where the testator's testamentary capacity and the absence of undue influence are often central issues." *Id.* at 246-247. We think these principles apply equally here. The plaintiffs' suggestion that had the defendant not misrepresented the terms of their mother's last will they would have arranged for another attorney to prepare a will that expressed her intentions is both speculative as to what she would have executed and an ominous allusion to undue influence. See *Neill* v. *Brackett*, 234 Mass. 367, 369 (1920).

We conclude that there was a potential conflict of interest between the defendant's duty of undivided loyalty to Estelle and any that may have arisen from his misrepresentation to the plaintiffs sufficient to negate any duty to them. See *Robertson* v. *Gaston Snow & Ely Bartlett, supra.*

4. *G. L. c. 93A claim.* The judge correctly concluded that the plaintiffs could not maintain a G. L. c. 93A claim against the defendant. They were neither his clients nor were they acting on

behalf of a client. See *Schaeffer* v. *Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.*, 405 Mass. 506, 514 (1989). As nonclients they must show the defendant was acting in a business context. See *First Enters., Ltd.* v. *Cooper*, 425 Mass. 344, 347 (1997). The defendant was not engaged in trade or commerce with the plaintiffs within the meaning of G. L. c. 93A. See *Logotheti* v. *Gordon, supra* at 312.

*Judgment affirmed.*