THOMAS W. ROGERS, JR., & others[1] vs. THEODORE C.
REGNANTE.[2]

No. 97-P-1971.

Suffolk. June 10, 1999. - October 2, 2000.

Present: ARMSTRONG, C.J., KASS, & PORADA, JJ.

*Attorney at Law*, Malpractice, Attorney-client relationship, Drafting of will.
*Negligence*, Attorney at law.

In a legal malpractice action, arising out of the asserted negligence of an at-
torney in drafting a will, brought by the children of the testator, there was
no reliable, clear, and persuasive evidence, known to the attorney, of the
testator's intent to pass his entire estate to his children, to warrant submis-
sion of the case to a jury; summary judgment was correctly ordered for the
defendant. [153-155]

CIVIL ACTION commenced in the Superior Court Department on
September 30, 1994.

The case was heard by *Patrick J. King*, J., on motions for
summary judgment.

*Douglas W. Salvesen* for the plaintiffs.

*George A. Berman* for the defendant.

ARMSTRONG, C.J. The defendant Regnante, an attorney at law,
drafted a will for Thomas W. Rogers, Sr., that Rogers executed
in 1984. Rogers died in May, 1991, and, in accordance with
Rogers' directions in the 1984 will, the bulk of his estate poured
over into two trusts, the larger of which, $854,376, was for the
benefit of Rogers' wife Thelma, and the smaller, $518,828, for

[1]Sally Falcone, Judith Breed, and Polly LeBlanc.

[2]Other defendants named in the complaint were Attorney Mario Ciullo,
William W. Wigglesworth, and Robert G. Wigglesworth, the latter two as
executors of the estate of Thelma W. Rogers. Mr. Ciullo died prior to the fil-
ing of the complaint, and the personal representative of his estate was Harold
Chase. Also named, as a trustee process defendant, was Fleet Bank of Mas-
sachusetts, N.A., trustee for the disputed trust amounts described hereafter.

the plaintiffs, the children of Rogers' first marriage. The latter sued Mr. Regnante for negligently failing to draft a will that carried out what they claimed was Rogers' intention to pass all his property to them. A judge of the Superior Court ordered summary judgment for Mr. Regnante and all the other defendants (see note 2, *supra*). The plaintiffs appealed only from the judgment for Mr. Regnante.

We recount the facts most favorable to the plaintiffs that can be gleaned from the summary judgment record. Thomas Rogers, Sr., was a sophisticated businessman and former bank director. His first wife, the plaintiffs' mother, died in May of 1977, after a marriage of over forty years. In September of that year, at age 74, Rogers married Thelma W. Wigglesworth, then 66 years old with three children from a prior marriage.[3] By all accounts, Rogers had a close and caring relationship with his children and with Thelma at all relevant times.

Before marrying, Rogers and Thelma entered into a written agreement drafted by Mr. Mario Ciullo under which property of each spouse was to remain "sole and separate," except that Thelma would receive a life estate in Rogers' Swampscott home on his death. Though the agreement noted that their property would "ultimately pass to [each] party's [descendants] by his or her prior marriage," another provision stated that "nothing contained in this agreement shall be deemed to constitute a waiver by either party of any gift, bequest or devise that the other party may choose at any time to make to him or her in any manner." Rogers and Thelma kept separate finances during their marriage. There is no evidence that Mr. Regnante knew of their separate finances or of the antenuptial agreement.

The plaintiffs' affidavits and depositions have it that Rogers told them on several occasions that he would leave his entire estate to them — first, before the wedding with Thelma; second, at the reception, in Thelma's presence; and third, while speaking with Thomas, Jr., in late 1985. There is no evidence that Mr. Regnante knew of these statements.

On October 31, 1979, Rogers executed a will leaving his estate to his children except for two items passing to Thelma: a life estate in his home and an annuity of $12,000 in annual income and the power in Thelma to appoint any remainder in

---

[3]Two of these children are the codefendants Robert and William Wigglesworth.

the annuity as she wished. The record does not reveal who drafted the 1979 will; Mr. Regnante did not draft it, although he later saw it. The record also does not reveal the existence of any prior wills.

Rogers executed another will on November 3, 1980, the first drafted by Mr. Regnante. In that will, Rogers left his personal property to Thelma but reserved the right to leave a separate memorandum to change that disposition. A pour-over provision distributed the balance of the estate under a trust document drafted by Mr. Regnante and executed with the will, designed to minimize estate taxes by using a marital deduction for assets left to a surviving spouse. On Rogers' death, two trusts would form. The estate would fund the first, the "A" trust, in an amount maximizing the Federal marital deduction, with the balance of the estate passing to the second, or "B" trust. During her life, Thelma would receive the income from the A trust and, on request, the principal. The A trust remainder would pass on her death as she might appoint in her will; in default of appointment, the remainder would go to the B trust.[4] The B trust would be distributed equally among Rogers' children.

On June 15, 1982, Rogers sent this handwritten note to Mr. Regnante:

> "I wish to change a part of my last will, as follows — Under the title of *personal property* I possess at the time of my death, automobile, clothing etc., now left to my wife, Thelma, I wish changed so that the above *personal property* will go to my four children along with the rest of my estate." (Underlining in original.)

Mr. Regnante did not amend the estate plan based on this note, and it is not disputed that the note itself was effective to redirect Rogers' personal property under the 1980 will.[5]

In August of 1984, Rogers requested through a signed memorandum that Mr. Regnante make two changes in his estate

---

[4]At deposition, Mr. Regnante testified that Rogers was the one who brought up the A/B trust and insisted that Thelma have control of the A trust and power to appoint the remainder. However, we cannot credit his testimony in reviewing a summary judgment granted in his favor.

[5]In response to Rogers' remark about the "rest of my estate" going to his children, Mr. Regnante testified at deposition that he questioned Rogers, who acknowledged his understanding that under his estate plan Thelma would control the A trust and explained that the note meant only that his personal

plan: first, he wanted Thelma to have a life estate in his Swampscott home including the personal property therein, and an option to move to a different residence provided by the trustee; and second, he wanted his son Thomas to have an option to purchase his New Hampshire property at fair market value. Mr. Regnante had an associate draft new estate documents, which were executed on October 11, 1984. The new trust included the above changes and others designed to conform to amendments to the tax laws. As before, the trusts were used to harness the marital deduction. The first, now called the General Marital Trust, was to be funded in an amount maximizing the Massachusetts marital deduction. During her life, Thelma would receive income therefrom and principal as the trustee deemed necessary. Over the remainder, Thelma would have a general power of appointment as before, a failure to exercise which would cause the remainder to pass on her death to the other trust, the Special Marital Trust. That trust, like the earlier B trust, would initially be funded with estate proceeds not passing to the General Trust. However, unlike the B trust, the Special Trust was distributable to Rogers' children only on Thelma's death.[6] While she lived she would receive B trust income and so much principal as the trustee deemed appropriate.

It is agreed that Rogers was competent and untouched by fraud or undue influence when executing these unambiguous testamentary documents. Also undisputed is that Mr. Regnante's execution procedure included Rogers' reviewing and initialing of each page.

In February of 1990, Rogers was admitted to a convalescent home. On September 25, 1990, Thelma executed a will drafted by Attorney Ciullo that for the first time exercised her power of appointment over the General Marital Trust, in favor of her estate. When Rogers died on May 17, 1991, his assets were governed by his 1984 estate plan; the General Trust, as stated earlier, received $854,376 and the Special Trust the $518,828 balance. At Thelma's death on January 13, 1994, pursuant to her 1990 will, the General Trust remainder passed to her children. The plaintiffs filed this action on September 30, 1994,

---

property was to go to his children along with the B trust. Again, we disregard Mr. Regnante's testimony for summary judgment purposes.

[6]The origin of this feature of the new plan is not apparent. The plaintiffs have not relied on it, however, as support for their malpractice claim.

and the case is before us on their appeal from the summary judgment ordered for Mr. Regnante on their malpractice claim.[7]

At the heart of the plaintiffs' malpractice claim was their contention that Mr. Regnante knew or should have known that Rogers's intent when he executed the 1984 estate plan was to leave his entire estate to them, and that Mr. Regnante negligently drafted a plan that thwarted that intent.[8] In his motion for summary judgment, Mr. Regnante argued both that he owed no duty to the plaintiffs because he had no attorney-client relationship with them, and that there was insufficient evidence of breach of duty. The judge granted summary judgment based solely on the second argument, concluding that the evidence did not raise a triable issue.

*Discussion.* "The duty of care owed by an attorney arises from an attorney-client relationship," which "is an element of a malpractice plaintiff's proof." *Miller* v. *Mooney*, 431 Mass. 57, 60-61 (2000). While Rogers' children were not Mr. Regnante's clients in a direct sense, we assume without deciding that they could satisfy the attorney-client element under a third-party beneficiary theory — that is, by proving the existence of a contract between Mr. Regnante and Rogers to put together an estate plan in 1984 for their benefit. See *Ryan* v. *Ryan*, 419 Mass. 86, 90 (1994); *Miller* v. *Mooney*, 431 Mass. at 61 & n.3; *Connecticut Junior Republic* v. *Doherty*, 20 Mass. App. Ct. 107, 112 (1985). See generally 4 Mallen & Smith, Legal Malpractice § 31.4 (4th ed. 1996). Like the judge, we focus on the adequacy of the plaintiffs' proof of the pivotal aspect of such a contract, that Rogers' intent, made known to Mr. Regnante,[9] was to leave his entire estate to his children.

"Proof sufficient to override the purposes behind the Statute of Frauds and the Statute of Wills in this circumstance must be clear and persuasive." *Ryan* v. *Ryan*, 419 Mass. at 92-93 (also

---

[7]The portions of the judgment not appealed from dealt with claims for breach of fiduciary duty by Thelma and by Attorney Ciullo.

[8]The complaint stated: "Attorney Theodore C. Regnante violated or breached his duty of care when he prepared the Indenture of Trust and advised Thomas W. Rogers to execute the Indenture of Trust without explaining to Thomas W. Rogers that, under the terms of the Indenture of Trust, Thelma W. Rogers could thwart his desires to leave all his property, including the assets in the General Marital Trust, to his four adult children."

[9]The plaintiffs concede in their brief, "it is not enough that Rogers intend[ed] to leave his estate to his own children. Regnante must have been made aware of that intent."

stating the standard as "reliable, persuasive evidence" and "strong, clear, and convincing evidence"). *Ryan* was a malpractice action where the plaintiffs sought to prove that their deceased father, a lawyer, had orally promised his former wife, their mother, to leave two-thirds of his estate to the children and that the father, as her attorney, erroneously advised her that the oral promise was enforceable. The only evidence that such advice was ever given was uncorroborated testimony of a daughter that her deceased mother had told the daughter that the father had so advised the mother. In holding that evidence insufficient for finding that the advice was given, the court articulated the proof standard quoted above, drawn from cases involving reformation of instruments[10] and proof by oral evidence of a lost will. See *id.* at 92, and cases cited.[11]

The obvious factual difference between *Ryan*, where the lawyer was the testator, and the present case, where the two are distinct, does not in our opinion call for a different evidentiary standard. Policies of solemnity and finality of estate documents are of equal importance in the present case, which in effect represents an attempt to discount an otherwise clearly stated testamentary disposition.

For their part, the plaintiffs accept the *Ryan* standard, but argue that the evidence of Rogers' expressed intent was sufficiently reliable, clear, and persuasive that the claim of malpractice should have gone to the jury. The judge was correct in rejecting that argument.

As to several of the supposed indicia of Rogers' intent to leave all to his children — the antenuptial agreement, the separate marital finances, and Rogers' various statements to his

---

[10]The reformation standard of "full, clear, and decisive proof" has been likened to proof by "clear and convincing evidence," and is said to require a conviction on the part of the judge that the proof was "clear and well-founded." See *Putnam v. Putnam*, 425 Mass. 770, 772-773 (1997).

[11]The court also favorably cited Restatement of Law Governing Lawyers § 73 comment f (Tentative Draft No. 7, 1994) and parenthetically quoted from that source the following passage: "When a third party seeks to recover from a lawyer for failing to exercise care in implementing a client's intent relating to a document, such as a will, for which the law imposes formal or evidentiary requirements, the third person must prove the client's intent by submitting evidence whose reliability is comparable to that ensured by those requirements." The same comment, as appearing in Tentative Draft No. 8 (1997), uses the phraseology "the third person must prove the client's intent by evidence that would satisfy the burden of proof applicable to construction or reformation (as the case may be) of the document."

children — there is no evidence that Mr. Regnante was ever made aware of such things.[12] On the other hand, Mr. Regnante was aware of Rogers' 1979 will, his 1980 estate plan, the 1982 note, and the 1984 estate plan. In the main, these documents contradict the plaintiffs' position. The 1979 will, drafted by another attorney, left Thelma a life estate in Rogers' home and a substantial annuity and power to appoint its remainder — bequests not consistent with an intent solely to favor his children. The 1980 and 1984 plans also left Thelma substantial assets, and were signed by Rogers after reviewing and initialing each page.

The only document possibly supporting the plaintiffs was the 1982 note from Rogers calling for his personal property to go to his children "along with the rest of [his] estate." The phrase is puzzling; but, even if given maximum value as an expression of Rogers' intent in 1982 to pass his entire estate to his children, his later execution of the 1984 estate plan must be taken as a conclusive change in that intent. See *Connecticut Junior Republic* v. *Doherty*, 20 Mass. App. Ct. at 111 ("Perhaps it is to ward off attacks from [disappointed] persons that the general rule has developed that a competent testator meant what he signed and signed what he meant"). Alternatively, the plaintiffs contend that the 1982 note proves that Rogers did not understand that the documents he had executed in 1980 — and by implication (through their similarity) those in 1984 — did not leave everything to his children as he truly intended. Thus, they argue, Mr. Regnante committed malpractice in 1984 because he must have failed to explain the effect of the plan and ensure it was consistent with Rogers' true intent. The urged inferences, however, are too tenuous for a rational trier of fact to consider the 1982 note "strong, clear, and convincing" evidence of an intent made known to Mr. Regnante by Rogers in 1984 that only his children should benefit from his estate. Besides being speculative, such an intent and understanding of the plan are contradicted by Rogers' written request in August of 1984 to modify the plan to allow Thelma a life estate in his Swampscott residence or another of her choosing. Under the plaintiffs' theory, their father intended that she should have no interest at all in his property.

The judgment below is affirmed. The defendant's request for

---

[12]Moreover, there is no necessary inconsistency between these items and an actual intent on Rogers' part to provide for Thelma.

the imposition of costs under G. L. c. 211A, § 15, and Mass. R.A.P. 25, as appearing in 376 Mass. 949 (1979), for pursuing a frivolous appeal is denied.

*So ordered.*