Welsh, J.
The plaintiffs, attorneys at law, commenced this action to recover for legal fees and expenses incurred in a prior action in the Superior Court in their defense of James E Miles, also an attorney. The gist of the former action was a claim against Miles for damages for his alleged breach of fiduciary duty owed to his former client, Cullen & Sons, Inc., and for his violation of G.Lc. 93A Defendant Theresa Miles, James Miles’ wife, was not a party to the action brought by Cullen & Sons, Inc.
The issue presented on this appeal is whether the trial judge erred in allowing the motion of Theresa Miles for a directed verdict on the ground that the Statute of Frauds precluded a judgment against her in the absence of a writing executed by her as the party to be charged for the legal fees and expenses in question.[4] The focus of our analysis is the issue of whether the evidence, viewed in the light most favorable to the plaintiffs, would taire the case outside the Statute of Frauds. If, on any reasonable view of the evidence, there is found a combination of facts from which rational inference may be drawn in favor of the plaintiffs, the directed verdict motion should have been denied. See Chase v. Roy, 363 Mass. 402,404 (1973). Since the defense of the Statute of Frauds was duly pleaded, the plaintiffs had the burden of proving that there existed a memorandum sufficient to satisfy the statute, or, in the alternative, that the statute did not apply. Kalkerv. Bailen, 290 Mass. 202,205 (1935).
James Miles retained the plaintiffs to represent him, as noted, in the defense of a lawsuit brought against him by his former client. James Miles was the plaintiffs’ only client; he alone signed a fee agreement with them. Theresa Miles was neither a party to the former lawsuit, nor a signatory to the agreement that was executed between James Miles and the plaintiff law firm. Theresa worked from time to time in her husband’s law office. Because of his financial difficulties, Theresa maintained James Miles’ checking account and routinely disbursed funds as required for the operation of his law office. In fact, it was she who wrote the check for *4 $10,000.00 which James Miles paid as an initial retainer to the plaintiff law firm. The evidence suggests that from the outset, or at the very least from early on in the Superior Court litigation, the plaintiffs were chary about payment for their legal services. When the initial retainer was almost exhausted and needed to be “refreshed,” the plaintiffs called for a meeting with Miles and requested that Theresa Miles also be present. The tenor of the plaintiffs’ letter demanding the meeting is suggested by the following excerpt:
You [Miles] and I need to discuss this case very soon. I suggest you bring your wife with you since she is playing a major role in financing our representation of you in this case [emphasis supplied]. Mike (Franco) has spoken to you about keeping current with retainer and fees. You have given your assurances. However, you have fallen seriously behind. We need to address this. ... I am not comfortable continuing unless we can get on the same page as to strategies and fees.
Shortly after the letter, both James and Theresa Miles met with two of the lawyers of the plaintiff law firm and assured them that payment would be forthcoming. Both Mr. and Mrs. Miles promised, inter alia, that they would arrange to refinance the mortgage on their residence so that the plaintiffs would be paid. No payment was made. The lawsuit against James Miles was resolved by a settlement a few months later.
During the course of that lawsuit, Theresa Miles was served with a subpoena duces tecum to furnish certain financial records sought by Cullen & Sons, Inc. in discovery in preparation for the trial of its action against James Miles. The plaintiff law firm successfiilly sought and obtained an order quashing the subpoena. While it might be assumed, favorably to the plaintiffs, that Theresa Miles benefitted incidentally from this successful activity by the plaintiff attorneys, the fair and logical inference is that the motion to quash was an integral part of the legal services the plaintiffs provided to James Miles since Theresa was acting at the time as a conduit or disbursing agent for her husband. The fact that Theresa may have derived an incidental benefit is not enough to take the case out of the Statute of Frauds. To avoid the statute, the benefit to Theresa would have to have been both direct and pecuniary. See M J. Pirolli & Sons, Inc. v. Massachusetts Equip. & Supply Corp., 9 Mass. App. Ct. 863 (1980). Compare Hayes v. Guy, 348 Mass. 754 (1965) (where promisor intends to derive, and does in fact derive, a benefit to which she was not then entitled, such a benefit is deemed direct and, as such, not within the Statute of Frauds). In other words, if the essence of the transaction is the obtaining of some benefit to the promisor from the promisee, and the payment of the continuing debt of the third person is merely incidental and not the real object of the transaction, the case is not within the Statute of Frauds. Colpitts v. L. C. Fisher Co., 289 Mass. 232, 234 (1935). The burden of demonstrating such a direct and pecuniary benefit is on the plaintiff. The mere fact that Theresa and James Miles are married and may share a community of interest, including financial interest, is insufficient of itself to demonstrate the sort of benefit that would take the case out of the Statute of Frauds. “Proof sufficient to override the purposes behind the Statute of Frauds... must be clear and persuasive.” Ryan v. Ryan, 419 Mass. 86, 92 (1994). There was insufficient evidence to take this case out of the Statute of Frauds.[5]
Contrary to the plaintiffs’ contention, the doctrine of promissory estoppel does not save the case from the application of the statute. Such promises as might have *5 been found to have been made by Theresa related solely to future conduct. Without evidence to show that she lacked any present intention when the promises were made to perform, promissory estoppel cannot correctly be applied. In other words, the misrepresentation must transcend the oral promise upon which the plaintiffs relied. In cases like Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722 (1974), there was a present misrepresentation of a material fact; i.e., that the agent with whom the plaintiff dealt had authority to sign on behalf of the company, and that completion of the contract was a mere bureaucratic formality. See Commonwealth Aluminum Corp. v. Baldwin Corp., 980 F. Supp. 598 (J). Mass. 1997). A brief but sufficient answer to the contention that the doctrine of promissory estoppel applies here is found in the case of Brightman v. Hicks, 108 Mass. 246 (1871).
A promise, upon which the statute of frauds declares that no action shall be maintained cannot be made effectual by estoppel, merely because it has been acted upon by the promisee and not performed by the promissor.
Id. at 248.
Finally, the mere fact that there was some consideration for the oral promise given by Theresa is insufficient to avoid the Statute of Frauds. Harold L. Baker. Co. v. Meledones, 352 Mass. 485, 487 (1967).
The judgment is affirmed.[6]
So ordered.

 Section 1 of G.L.c. 259 embodies the common law Statute of Frauds. It provides, in pertinent part: “No action shall be brought:... [sjecond, [t]o charge a person upon a special promise to answer for the debt, default or misdoings of another, ... [ujnless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.”

 While perhaps the case might have been presented on some theory that Theresa and James were engaged in a form of joint venture, that notion was not developed at trial. It is not the office of an appellate court to hypothesize a different theory of recovery than that proffered by the parties at trial.

 That portion of the judgment against Theresa Miles for attorneys’ fees assessed in connection with the allowance of the motion to dismiss her counterclaim under G.L.c. 231, §59H (the “Anti-SLAPP Statute”) has not been appealed and will not, therefore, be disturbed.