Greco, P.J.
The parties in this case had an arrangement, the exact nature of which is the main legal issue before us. The plaintiff, Martin Kerans (“Kerans”), was to renovate a condominium unit in South Boston owned by the defendant, Ilona L. Baranauskas (“Baranauskas”), in preparation for her potential sale of the unit. After a jury-waived trial, the judge found the following. Kerans was an experienced home improvement contractor. He and Baranauskas came to know each other from having done work for the same person, Ronald Mercurio (“Mercurio”). Late in 2007, Baranauskas approached Kerans about renovating her condominium. The parties, along with Mercurio, agreed that the unit required “a complete demolition,” that the walls and ceiling had to be removed and replaced, and that “[n]ew appliances and fixtures” had to be installed. Initially, Kerans “estimated” that these renovations would cost “between $25,000 and $30,000,” although he subsequently determined that the heating system had to be replaced, which work was done by another contractor at the cost of $5,000.00.[1] The above estimate also did not include the cost of granite counters in the kitchen. On June 2,2008, Baranauskas submitted a proposal to Kerans outlining the above work, but also including electrical work, replacement of kitchen cabinets, and hardwood floors. She proposed a price of $22,500.00 to cover labor and materials for this work. As the trial judge found, “[ajlthough there [was] little evidence beyond the ‘proposal’ as to what the ‘original plans’ were, there was no evidence to suggest the plans, materials and appliances used by [Kerans] were not part of the ‘original plans.’”[2]
*112 In early 2008, Kerans purchased the appliances and fixtures for the job, “pulled a building permit,” and “worked on the project when time would allow.” While, at first, Baranauskas did not press Kerans for a completion date, she began in December to put pressure on him to finish the job. Kerans told her “that he would put the job on the ‘front burner’ after the first of the year and he completed the project in early February 2009.” The trial judge found that through November 24, 2008, Baranauskas paid Kerans a total of $24,000.00, which was $539.00 less than what he believed he was owed. After November, Kerans “hired subs to perform plastering work, plumbing, fixtures and hardwood floors. By February 2009, [Kerans] had finished the majority of the work.” He subsequently sought further payments from Baranauskas totaling $15,400.00 for materials ($10,000.00), and labor for himself ($3,000.00) and his subcontractors ($2,400.00), all of which she refused to pay on the ground that she was obligated to pay only the $22,500.00 referred to in the “proposal.”
Kerans brought this action to recover the balance he believes he was owed. Baranauskas filed a counterclaim seeking damages under G.L.c. 93A on the ground that the work was done neither timely nor in a workmanlike manner. At the close of Kerans’ case, Baranauskas made an oral motion for a directed verdict that was denied — apparently on the basis that the defendant acknowledged the existence of a contract. The court denied the motion “[o]n the quantum meruit theory.” However, there is no indication that the court took any action on a contract theory. The trial judge found in favor of Kerans on his claim and awarded damages in the amount of $12,000.00, costs of $234.54, and prejudgment interest of $1,879.25, for a total of $14,113.79. He also found for Kerans on Baranauskas’ counterclaim. In so doing, the trial judge concluded that “[a]lthough the original agreement or proposal was admittedly vague, it nevertheless contained at least in general terms the work [Kerans] agreed to perform,” and that it was not “unusual” for such jobs “to cost more than what was originally contemplated by the parties.” However, he was “dubious” about the number of hours Kerans claimed he worked in the last month. As to Baranauskas’ counterclaim under G.L.c. 93A, the trial judge found that Kerans did not make “any misrepresentation in the negotiation of the contract”; that there was no evidence that he was not properly licensed to do the work or that she was dissatisfied with the initial delay; that if there were defects in the work, they did not “fall below industry standards”;[3] and that Baranauskas failed to establish that she suffered damages from any delay.[4]
Consequently, what we have in this case is a plaintiff appearing to claim that he has a right to recover damages on a quantum meruit theory, and a defendant clearly claiming that there was a contract, that the plaintiff violated it, and that she there *113 fore owed nothing. As to the former, “[q]uantum meruit is a theory of recovery, not a cause of action. It is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself. Recovery under this theory is derived from the principles of equity and fairness and is allowed where there is substantial performance but not full completion of the contract.”/A Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986). ‘To achieve recovery under the theory of quantum meruit, the claimant must prove (1) that it conferred a measurable benefit upon the defendant!]; (2) that the claimant reasonably expected compensation ...; and (3) that the defendant!] accepted the benefit with the knowledge, actual or chargeable, of the claimant’s reasonable expectation.” Finard & Co. v. Sitt Asset Mgt., 79 Mass. App. Ct. 226, 229 (2011). However, “[r]ecovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute. Where such a contract exists, the law need not create a quantum meruit right to receive compensation for services rendered.” Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993).
On the other hand, as to a contract theory, “[i]t is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.” Situation Mgt. Sys. v. Malouf, Inc., 430 Mass. 875, 878 (2000). While “[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto,” Rosenfield v. United States Trust Co., 290 Mass. 210, 217 (1935), “[r]ules of contract must not preclude parties from binding themselves in the face of uncertainty. If the parties specify formulae and procedures that, although contingent on future events, provide mechanisms to narrow present uncertainties to rights and obligations, their agreement is binding.” Lafayette Place Assocs. v. Boston Redevelopment Auth., 427 Mass. 509, 518 (1998). Moreover, the extent to which one party has already performed services should be considered. See Lambert v. First Nat'l Bank, 449 Mass. 119, 125 (2007).
In the context of the above legal principles and the facts found, the trial judge was warranted in concluding that there was no enforceable contract. Specifically, he was warranted in finding that the proposal was not meant to be a binding contract, but only a mechanism that allowed Kerans to get a building permit. Additionally, he could have considered the vagueness of the proposal, the lack of a completion date, and the open-ended nature of the amount to be paid by Baranauskas. Accordingly, he was justified in proceeding to assess damages in quantum meruit, that is, to award Kerans the amount he deserves. As to damages, Kerans has not appealed the amount awarded.
Baranauskas, however, argues that damages should have been awarded only for breach of the contract — a position rejected by the court. In any event, she argues that damages should have been limited to the $22,500.00 figure set out in the proposal. As the trial judge found, in the circumstances of this case, it would have been unreasonable for Baranauskas to believe that at the time the proposal was made, such a ceiling as to labor and materials had been set. This was definitely a work in progress. Based on Baranauskas’ testimony, the trial judge was warranted in finding that she was not complaining about payment for work done through 2008, which amounted to the $22,500.00, plus the $1,500.00 for the granite countertop, for a total of $24,000.00. Kerans testified that he did substantial additional work in the first few *114 months of 2009. According to the “synopsis of receipts” and invoices submitted at trial, he sought payment for additional materials in the amount of $11,357.61 and for labor in the amount of $3,400.00. (The amount for materials appears also to include amounts for the labor of any subcontractors.) Receipts for merchandise and invoices from subcontractors were included in the record appendix filed by Baranauskas. As noted above, the trial judge made a determination that some of the damages sought were not reasonable and awarded a lesser amount. See Ryan v. Ryan, 419 Mass. 86, 94 n.12 (1994), where the Supreme Judicial Court noted that “[i]n quantum meruit actions, our more recent cases have referred to the value of the services rendered or to the fair value of what the defendant has received” (citations omitted).
Accordingly, in the above circumstances, there was no error in ordering judgment on a quantum meruit theory and in the amount set. The judgment of the trial court is affirmed.
So ordered.

 Kerans has never contended that he was owed anything relative to the heating system.

 Baranauskas testified that in June of 2008, she “wanted a contract.” She acknowledged that there was a contract before June 13,2008. When shown the proposal, she testified, “Yes. That’s our contract.” However, at trial, Kerans testified that his arrangement -with Baranauskas was for a time-and-materials project, that he does not usually have a written contract for the jobs he does, and that he did not intend to have a contract with Baranauskas. On cross-examination, when defense counsel referred to the proposal, Kerans stated, “I wouldn’t refer to it as a contract. I would refer to it as a proposal that needs to be done, required to pull the permit through the City of Boston.”

 Baranauskas testified, however, that she told Kerans “it was the most disgusting job he ever did. Everything’s wrong. I have to do it over, most of the work.”

 The trial judge made findings of fact and conclusions of law even though neither party submitted “before the beginning of any closing arguments proposed findings of fact and rulings of law.” Mass. R. Civ. R, Rule 52(c). As indicated in the Reporters’ Notes to Rule 52, a judge may make such findings and rulings “sua sponte, even where doing so is not required.”