THOMAS PYBURN *vs.* FISHERY PRODUCTS, INC., & others.[1]

Essex.  May 18, 1981. — October 15, 1981.

Present: GREANEY, ROSE, & DREBEN, JJ.

*Practice, Civil*, Master: findings.  *Contract*, What constitutes, Building
   contract.

In an action for breach of contract, a master's subsidiary findings that the
   defendant general contractor had entered into a contract with a sub-
   contractor for thirty days' work for which it would issue checks made
   payable to both the plaintiff and the subcontractor in return for the
   plaintiff's promise to lift a lien he had previously claimed because of
   the subcontractor's failure to pay him for work already performed and
   to assist the subcontractor in completing the construction work did not
   support his general finding that the contract did not create any liabil-
   ity on the part of the general contractor to the plaintiff and did not in-
   clude a promise by the general contractor to pay the subcontractor's
   debt to the plaintiff.  [507-510]


BILL IN EQUITY filed in the Superior Court on Decem-
ber 26, 1973.

The suit was heard by *Bennett, J.*, on a master's report.

*Emmanuel N. Papanickolas* for the plaintiff.

ROSE, J.  The plaintiff, Thomas Pyburn, instituted suit to
enforce a lien under G. L. c. 254, §§ 5 and 11, for work
performed under an oral contract with subcontractor Ross-
con Corporation (Rosscon).  The case was referred to a mas-

---

[1] Boston Five Cents Savings Bank; Richard Martin Development Com-
pany, Herbert Horgan, Richard Gourdeau, Martin R. Dunn, trustees;
Rosscon Corporation.

ter.[2]  While hearings before the master were proceeding, Pyburn added a second count to his complaint, alleging breach of a written contract between himself and Rosscon and the project's general contractor, Richard Martin Development Company (Martin).  The master concluded that Pyburn was entitled to a lien under G. L. c. 254, § 1, and that Martin was not liable to Pyburn under the second count of the complaint.  Over Pyburn's objections, the court adopted the master's report.  Judgment was entered for the plaintiff on count one.  Count two was dismissed against both Martin and Rosscon.  Pyburn appeals from the judgment, but addresses his argument solely to the dismissal of count two of his complaint.

The defendants Martin and Rosscon entered into a written contract on August 8, 1973, under which the subcontractor Rosscon was to perform excavation and grading work on a building site.[3]  Pursuant to that contract Rosscon and Pyburn made an oral agreement that Pyburn would do grading on the site.  Although Rosscon's work was to have been completed by September 28, 1973, it remained unfinished on March 6, 1974, the date on which Pyburn and his attorney met with representatives of Rosscon and Martin to discuss the matter of the completion of Rosscon's work.  Pyburn, who had performed until November 2, 1973, had claimed a lien and commenced this suit in December, 1973.  The master found that Pyburn's charges to Rosscon were fair and reasonable and that on March 6 Rosscon was still in default of his contract with Martin and still owed Pyburn a balance of $10,280.[4]  The master found that "a valid and

---

[2] The case was referred and heard with the related case of *Rosscon Corp.* v. *Martin R. Dunn & others* (Superior Court, Essex County, No. 21572 Eq. [1974]), which concerns us only in so far as subsidiary findings and exhibits in that case were incorporated by reference in the master's report of the case before us.

[3] The defendant Fishery Products, Inc., was the owner of the lot of land on which the building was to be erected.  The defendant Boston Five Cents Savings Bank was the mortgagee of record of the property.

[4] This figure was later adjusted to $9,580.

enforceable agreement" was entered into on March 6 for thirty days' work at a cost of $19,000, that Martin's representative stated "he wanted the job done as expeditiously as possible . . . [and] that he wanted the Pyburn lien removed," that Pyburn agreed to lift the lien, that it was agreed that "no equipment or subcontractors, other than Rosscon or Pyburn should be on the job," that "Pyburn's promise to [Martin] to work with Rosscon to finish the job was sufficient consideration to support the promise of [Martin] to pay Rosscon for the work," and "that at the meeting of March 6 the parties also agreed that checks in payment should be made payable to 'Pyburn and [Rosscon's representative]'." A memorandum containing the terms of the agreement, but not including the method of payment, was initialed by the parties.

The master then found that Martin committed a breach of that agreement on March 15 but concluded that the agreement did not "creat[e] any liability on the part of [Martin] to Pyburn," or "includ[e] any promise by [Martin] to pay the charges made by Pyburn to Rosscon for the work performed by Pyburn up to November 2, 1973." We think the judge erred in not sustaining Pyburn's specific objections to these general findings.

When a master's report "'shows upon its face all the subsidiary facts which the master . . . had in mind and upon which he based his . . . [general findings], . . . we are in no way bound by . . . [his general findings], and we must take these subsidiary findings together with the inferences that ought to be drawn from them and reach our own conclusion.'" *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 283-284 (1976), quoting from *O'Brien* v. *Dwight*, 363 Mass. 256, 281-282 (1973), and cases cited. *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 660 (1975). *McNamara* v. *Westview Bldg. Corp.*, 4 Mass. App. Ct. 670, 671 (1976). *Lemieux* v. *Rex Leather Finishing Corp.*, 7 Mass. App. Ct. 417, 418 (1979). *D. Federico Co.* v. *New Bedford Redev. Authy.*, 9 Mass. App. Ct. 141, 142 (1980). By the orders of reference, the master

was directed not to file a report of the evidence with his report but to disclose in his report his subsidiary findings of fact and his conclusions of fact and law based thereon. The report sets forth adequate subsidiary findings to make it reasonable to assume that the master complied with the order, and we are free to draw our own inferences from those findings. *Jones* v. *Gingras,* 3 Mass. App. Ct. 393, 395-396 (1975). *Bennett* v. *Papetsas,* 6 Mass. App. Ct. 568, 569-570 (1978). *E. F. Semas Trucking, Inc.* v. *Mayor of Taunton,* 7 Mass. App. Ct. 907, 908 (1979). On the face of the master's subsidiary findings it is clear that the meeting of March 6 produced a contract between Martin and Pyburn under which Martin was bound to make payments to Pyburn and Rosscon, and Pyburn was bound to lift his lien and assist Rosscon in completing the construction work. Pyburn's objection to the master's conclusion that the contract did not create any liability of Martin to Pyburn should not have been overruled. "If . . . a master's report discloses . . . the basis for a general finding and it is apparent thereby that the general finding is erroneous, a party aggrieved by the general finding is entitled to have his objection to the general finding sustained . . . ." *Bills* v. *Nunno, supra,* at 283, citing *United States Fid. & Guar. Co.* v. *English Constr. Co.,* 303 Mass. 105, 111-112 (1939). See also *Urban Transp., Inc.* v. *Mayor of Boston,* 373 Mass. 693, 694 n.1 (1977), citing *Central Tow Co.* v. *Boston,* 371 Mass. 341, 342 n.3 (1976).

As to the master's general finding that the March 6 agreement did not include a promise by Martin to pay the charges made by Pyburn to Rosscon for the work performed by Pyburn up to November 2, 1973, we find irresistible the conclusion that such a promise was made. We think this case is related to Massachusetts decisions allowing recovery for an oral promise to pay the debt of another, when the essence of the agreement containing such promise is to obtain a pecuniary benefit by the promisor from the promisee, and when such promise is merely incidental to obtaining that benefit. *Hayes* v. *Guy,* 348 Mass. 754, 756 (1965), citing *Colpitts* v.

*L. C. Fisher Co.*, 289 Mass 232, 234 (1935).[5] "[A]greements which will have the effect to discharge the debt of another, must be founded in a motive of interest, selfish in the promisor. The distinction is between a promise, the object of which is to promote the interest of another, and one in which the object is to promote the interest of the party making the promise . . . . [I]f the promisor is himself acquiring property or other pecuniary benefit, he is engaging not to pay the debt of another, but his own." 3 Williston, Contracts § 472, at 432 (3d ed. 1960).[6]

Here Martin's essential object was not to satisfy Rosscon's obligation, but to secure the direct pecuniary benefits of Pyburn's removal of the lien and assistance in completing the project. See *Hayes* v. *Guy, supra; Merrill* v. *Kirkland Constr. Co.*, 365 Mass. 110 (1974); *Laurence Albre Associates, Inc.* v. *Italian Catholic Cemetery Assn.*, 9 Mass. App. Ct. 922 (1980). Contrast *Howard L. Baker Co.* v. *Meledones*, 352 Mass. 485 (1967); *M.J. Pirolli & Sons* v. *Mass. Equip. & Supply Corp.*, 9 Mass. App. Ct. 863 (1980). It follows that the breach by Martin in discharging Rosscon

---

[5] Since Martin did not plead the Statute of Frauds in its answer, and as it does not appear that the statute was relied on during the hearing before the master, we regard the statute as having been waived as a defense. *Rozene* v. *Sverid*, 4 Mass. App. Ct. 461, 465 (1976), and cases cited. Therefore, it is not necessary for us to decide, and we do not decide, whether the omission of the method of payment term from the written memorandum of March 6 was sufficient to bring the Statute of Frauds into play.

[6] "The expected advantage [to the promisor] must be such as to justify the conclusion that his main purpose in making the promise is to advance his own interests. Facts such as the following tend to indicate such a main purpose when there is an expected pecuniary or business advantage: prior default, inability or repudiation of the principal obligor; forbearance of the creditor to enforce a lien on property in which the promisor has an interest or which he intends to use; equivalence between the value of the benefit and the amount promised; lack of participation by the principal obligor in the making of the surety's promise; a larger transaction to which the suretyship is incidental." Restatement (Second) Contracts § 116, Comment b (1981). Section 116 appeared in Restatement (Second) of Contracts (Tent. Draft No. 4, 1968) as § 184. See also Illustration 3.

and Pyburn on March 15, 1974, was also a breach of Martin's promise to pay Pyburn's charges to Rosscon which were outstanding on November 2, 1973.

The portion of the judgment dismissing count two of the plaintiff's complaint is reversed, and a corresponding new portion of that judgment is to be entered against the defendant Richard Martin Development Company in the amount of $9,580; the judgment is otherwise affirmed.

*So ordered.*