Tucker, Richard T., J.
The plaintiff, A.T. Equipment, Inc. (“A.T. Equipment”), brought this breach of contract action against defendants John Cleckley (“Cleckley”) and Atlas Mortgage Corporation (“Atlas Mortgage”) to recover for payments due for the rental of two pieces of equipment. This action is before the court on Atlas Mortgage’s Motion for Summary Judgment on the ground that its agreement to pay for the debts owed by Cleckley to A.T. Equipment is unenforceable without a writing pursuant to G.L.c. 259, §1.[4] For the following reasons, Atlas Mortgage’s Motion for Summary Judgment is DENIED.
BACKGROUND
The facts and reasonable inferences therefrom, viewed in the light most favorable to the plaintiff, are as follows. Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011).
On or about May 11, 2007, Atlas Mortgage made a loan to developer Public Family, Inc. (“PFI”) in order to build a series of single-family homes on a residential street in Weymouth, MA (“the property”). The loan was secured by a mortgage on the property pursuant to which PFI would receive disbursements upon the completion of various stages of development.
Atlas Mortgage suggested to Cleckley, who at all relevant times was the president of PFI, that he contact A.T. Equipment to rent some of the equipment required for the development.[5] As a result, Cleckley met with Marek Topolewski (“Topolewski”) of A.T. Equipment on December 13, 2007, and signed a rental agreement to rent a piece of equipment known as Komatsu PC400.[6] A December 20, 2007 invoice sent from A.T. Equipment to Cleckley in the amount of $19,650 went unpaid. On January 9, 2008, Cleckley signed a new equipment rental agreement with A.T. Equipment to rent a piece of equipment known as Daewoo 290.[7] A January 15, 2008 invoice sent from A.T. Equipment to Cleckley in the amount of $8,205 went unpaid.[8] Thereafter, Cleckley informed A.T. Equipment that he would be unable to pay the amounts owed until he received loan disbursements from Atlas Mortgage.
On March 27, 2008, with the four invoices remaining unpaid, Topolewski made a phone call to Ken Chase (“Chase”), the president of Atlas Mortgage. The substance of the call was to inform Chase that the equipment would be removed from the construction site on account of lack of payment. In response, according to Topolewski, Chase stated that he was going to pay for the equipment so that A.T. Equipment would not remove it, and that “he would take care of it.”[9] After the phone call, and at the request of Chase, Topolewski faxed a letter to Chase memorializing the substance of the phone call.[10] Notably, neither Topolewski nor Chase affixed a signature to the fax. Thereafter, Chase mailed a check to A.T. Equipment in the amount of $20,000.[11] The balance owed on the four invoices referenced in the check’s memo line was $54,105. Neither Cleckley nor Atlas Mortgage paid the remaining balance. [12] As a result, A.T. Equipment sued both Cleckley and Atlas Mortgage for breach of contract and quantum meruit. It is Atlas Mortgage’s contention in this instant Motion for Summary Judgment that if the combination of the phone conversation between Topolewski and Chase, the letter faxed shortly thereafter, and the check mailed in response thereof amounted to an agreement by Atlas Mortgage to pay the debt of Cleckley, it was required to be in a writing signed by Atlas Mortgage to be enforceable, pursuant to G.L.c. 259, §1.
DISCUSSION
Summaiy judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). If the nonmoving party bears the burden of proof at trial, the moving party may satisfy the Rule 56 burden by submitting evidence negating an essential element of the nonmoving party’s claim or by demonstrating that the nonmoving party lacks sufficient evidence to establish an essential element of its claim. Kourouvacilis, 410 Mass. at 715. The court reviews the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Att’y Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
G.L.c. 259, § 1 provides in pertinent part; “No action shall be brought... To charge a person upon a special promise to answer for the debt, default, or misdoing of another . . . unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged.”[13] There are two exceptions to the writing requirement imposed on contracts entered into to answer for the debt of another. The first is a novation, whereby the creditor agrees to extinguish the old contract and accepts a new contract. See Pagounis v. Pendelton, 52 Mass.App.Ct. 270, 273 (2001) (novation involves a clear indication of the intent to discharge a preexisting indebtedness in favor of a new substitute contract). The other is what Massachusetts case law refers to as the “leading object” exception. Under the “leading object rule,” a contract that effectively answers for the debts of a third party is not within G.L.c. 259, §1 if the promisor acquires his own pecuniary benefit. See Barboza v. Liberty Contractors Co., Inc., 18 Mass.App.Ct. 971, 972 (1984). By acquiring such a benefit, the promisor is agreeing to pay his own debt, and that agreement need not be in writing to be enforceable. See Hayes v. Guy, 348 Mass. 754, 756 (1965); see also Pyburn v. Fishery Prod., Inc., 12 Mass.App.Ct. 505, 508-09 (1981). That the debt of another is extinguished by that agreement *93 does not bring it within the purview of G.L.c. 259, §1. See Hayes, 348 Mass. at 756.
Understandably, a party who promises to answer the debts of another inherently receives the benefit of the promisee’s continued performance under the contract. However, the continuation of performance under the contract does not automatically transform the object of the transaction into a pecuniary benefit to the promisor. See M.J. Pirolli & Sons, Inc. v. Mass. Equip. & Supply Corp., 9 Mass.App.Ct. 863, 864 (1980). Instead, the leading object rule is concerned with agreements whereby the payment of a third party’s debt is merely incidental to the promisor’s acquisition of his own benefit. See Hayes, 348 Mass. at 756; see also Cent. Ceilings, Inc. v. Nat’l Amusements, Inc., 70 Mass.App.Ct. 172, 181 (2007).
In Cent. Ceilings, Inc., 70 Mass.App.Ct. at 173, the defendant landowner engaged a builder to construct a theater complex on its land. Id. The builder in turn engaged the plaintiff as the drywall/acoustical/carpentry /hardware installation subcontractor. Id. As problems arose with the project’s completion schedule, the builder failed to make payments to the plaintiff. Id. at 173-74. The landowner, who wanted the complex to be ready for Labor Day weekend to take advantage of historically large movie audiences, agreed to pay the plaintiff the balance due and to guarantee all future payments in exchange for the plaintiffs continued work. Id. at 175. The plaintiff never received full payment and brought suit against the defendant landowner who argued that the agreement was unenforceable for lack of a writing. Id. After discussing the requirements of G.L.c. 259, §1, the court found the following: the defendant landowner wanted the complex open for the profitable Labor Day weekend, the completion schedule was tight, the plaintiffs work was significant to the completion, the plaintiff was ready to begin work, and the plaintiff was one of the only subcontractors who could perform the work it was hired to do. Id. at 181. The court held that this evidence was sufficient for a jury to find that the defendant landowner’s promise was given to secure the plaintiffs continued and expedited performance and that the satisfaction of the builder’s debt to the plaintiff was merely incidental to that promise. Id. at 182.
Similarly, the defendant general contractor in Barboza v. Liberty Contractors Co., 18 Mass.App.Ct. 971, 972 (1984), promised the plaintiff gravel supplier that if it resumed shipments to the work site after not being paid by the pavement subcontractor, the defendant would pay the plaintiff for both prior and future deliveries. Barboza, 18 Mass.App.Ct. at 971. The defendant attempted to avoid payment by arguing that the agreement was unenforceable for lack of a writing. Id. The court found that the defendant needed the plaintiffs gravel, that the plaintiff had the right gravel for the job, and that the defendant wanted to prevent further delays for an already late project. Id. at 972. The court held that the evidence was sufficient for a juiy to determine whether the main purpose of the promise was to assure prompt delivery or to answer the debt of another. Id.
Like the landowner in Cent. Ceilings, Inc. who made payments to the subcontractor for the general contractor’s debts, and the general contractor in Barbozawho paid the gravel supplier for the pavement subcontractor’s debts, Atlas Mortgage paid A.T. Equipment a portion of the debt Cleckley owed A.T. Equipment in exchange for A.T. Equipment’s promise to leave the equipment at the property, as called for by the rental agreements. Just as the court held in both Cent. Ceilings, Inc. and Barboza, whether Atlas Mortgage made the payment to A.T. Equipment to answer for Cleckley’s debt, or to maintain or enhance the value of the property with an eye towards foreclosure is a question of fact for the jury. This is especially so given that a jury must also determine, based on testimony or evidence submitted at trial, the substance of the March 27, 2008 agreement between Topolewski and Chase, as well as Atlas Mortgage’s foreclosure time line with respect to the property.[14] As a result, Atlas Mortgage is not entitled to summary judgment as to A.T. Equipment’s breach of contract claim.[15]
ORDER
For the reasons stated herein, it is ORDERED that defendant Atlas Mortgage’s Motion for Summary Judgment is DENIED.

The surety portion of the common-law statute of frauds is found in the second paragraph of c. 259, §1. G.L.c. 259, §1 will hereinafter be used in the body of this decision and order to refer only to the second paragraph of that section.

The equipment was needed for the installation of water and sewer lines between two homes on the-street in order to bring water and sewer utilities to other lots under development.

On the signed rental agreement, the Lessee is identified as John Cleckley and the Lessor is identified as A.T. Equipment. The rent per month, to begin on December 24, 2007, was set at $18,000. The terms of the rental agreement also required Cleckley to obtain a $180,000 insurance binder. The insurance binder was never presented.

On the signed rental agreement, the Lessee is identified as John Cleckley and the Lessor is identified as A.T. Equipment. The rent per month, to begin on January 10,2008, was set at $7,000. The terms of the rental agreement also required Cleckley to obtain a $125,000 insurance binder. The insurance binder was never presented.
Marek Topoloewski, at his deposition, suggested that he was generally apprehensive to rent equipment to someone without proof of insurance.
A.T. Equipment also failed to conduct a credit check on Cleckley before entering into either rental agreement with him.

 Two March 1, 2008 invoices, one for $7,350 and the other for $18,900, also went unpaid.

From the deposition of Marek Topolewski: “[The substance of the call] was that [Chase] was going to pay for the equipment not to take it off the job, and he would take care of it... I told him that we were going to pull the equipment off the job site . . . because we hadn’t been paid. And between me and [Chase] we had an agreement that he would make an installment on the total balance if we would keep the equipment there until a certain date, and then on that date he would pay the remaining . . . balance ... I believe the agreement with [Chase] was going to continue under the original rental contract.”

The letter reads (on A.T. Equipment Letterhead):
March 27, 2008
Attn: Ken Chase
As per our conversation today 03/27/2008 I can confirm that A.T. Equipment, Inc. will keep the rental Equipment, KOMATSU PC400 with 10,000 lb hammer, DAWEOO 290 with bucket, for use on the Weymouth job site until April 15th under the current rental contract Balance to be paid by April 15th 2008 also as agreed.
Any questions please feel free to call.
Sincerely,
Marek Topolewski
A.T. Equipment
Sales and Rental

The Memo line of the check reads: “Weymouth/Inv #8051, 8085, 8127, 8126.” These are the four invoices that had been sent to, and which remained unpaid by, Cleckley.

PFI was also unable to satisfy its obligations under its loan agreement with Atlas Mortgage, and on May 14, 2008, Atlas Mortgage foreclosed on the property. At this stage of litigation, it is not known when PFI defaulted under the loan agreement and when Atlas Mortgage made the decision to foreclose, and when it began the foreclosure process.

Despite the undisputed applicability of G.L.c. 259, §1, Second, which is rooted in common-law exceptions to the statute of frauds, the court notes the potential applicability of G.L.c. 106, §2A-201(1). Section 2A-201(1) is the Statute of Frauds for the lease of goods under Massachusetts’ adoption of Uniform Commercial Code Article 2A. This section requires a lease of goods, for which the total payments will be greater than $1,000.00, to be in writing to be enforceable. A.T. Equipment leased two pieces of equipment to Cleckley, the total payments of which far exceeded $1,000.00.

That is, when PFI defaulted, when Atlas Mortgage decided to foreclose, and when the foreclosure process began, and the corresponding temporal relationship to the March 27, 2008 agreement.

Whether Atlas Mortgage was unjustly enriched or whether it violated 93A will depend significantly on whether the jury finds Atlas Mortgage bound by an enforceable agreement.